# CASES

IN THE

# SUPREME COURT OF ALABAMA.

DECEMBER TERM, 1885.

## Newsum *v.* The State.

*Judgment for Contempt against Refractory Witness.*

1. *Contempt by refractory witness before grand jury.*—A witness before the grand jury, refusing to answer any lawful questions as to his knowledge of gaming within the county during the preceding twelve months, is guilty of a contempt, and also of a misdemeanor (Code, § 4136); and if he is brought before the grand jury at their request, by order of the court, being imprisoned under a criminal charge or sentence, he is equally subject to the penalties of the law as if he had been summoned by subpœna.

FROM the Circuit Court of Colbert.

Tried before the Hon. H. C. SPEAKE.

JAS. JACKSON, for the appellant, cited *Warner v. The State*, 13 Lea, Tenn. 52; *Ex parte Simmons*, 5 Ired. Law, 149; *Easton v. The State*, 39 Ala. 551; 20 Ala. 189; 2 St. & P. 13.

T. N. McCLELLAN, Attorney-General, for the State.

STONE, C. J.—Section 4136 of the Code of 1876 provides, that "any person who is summoned as a witness before the grand jury, to answer as to any gaming within his knowledge, and who fails or refuses to attend and testify in obedience to such summons, without a good·excuse, to be determined by the court, is guilty of a contempt, and also of a misdemeanor; and on conviction for such misdemeanor, must be fined not less than twenty, nor more than three hundred dollars, and may also be imprisoned in the county jail, or sentenced to hard labor for the county, for not more than six months."

[Newsum v. The State.]

Section 4216: "Witnesses before the grand jury, summoned to give evidence of any violation of the laws against gaming, may be required to answer generally as to any such offense within their knowledge, committed within the twelve months next preceding, without being first specially interrogated as to any particular offense."

Section 4774: "The solicitor, or the clerk of the court, on the application of the grand jury, must issue subpœnas for any witnesses whom they may require to give evidence before them."

In the present case, there was no summons for the witness issued by any one. Newsum, the witness, was in prison, under a sentence which was about to expire, and the record affirms as follows: "It appearing that the said James Newsum has served out the imprisonment imposed on him on the 25th *inst.;* and the court being notified by the foreman of the grand jury, that the grand jury desired the presence of the said James Newsum before them; thereupon, the court ordered the sheriff to carry the said James Newsum before the grand jury." The record then proceeds to state, that Newsum was thereupon carried before the grand jury by the sheriff, "and, being before said body, was sworn by the foreman of said grand jury as required by law." Being interrogated by the grand jury, the witness answered some questions, and refused to answer others. The following are samples of the questions and answers: "Have you seen any game or games played in this county with cards, within the last twelve months, at which money was bet?" *Answer:* "Yes." "When was that game played?" *Answer:* "Don't know." "What is [are] the names of the persons engaged in said game?" "Refused to answer." In the record is the following recital: "It was also shown, that he refused to answer these questions so propounded to him in the grand-jury room, because the answers would criminate him. He was informed by the foreman of the grand jury, that his answers could not criminate him under the law. Newsum still declined to answer." Being brought into court, the presiding judge explained the law to Newsum, informing him that no witness could "be prosecuted for any offense, as to which he testified before the grand jury." He still declined to answer, giving the same reason, that he could not answer without criminating himself. This was scarcely consistent; for, in response to the request by the grand jury, that he name one person he had seen engaged "in a game or games played in this county with cards within the last twelve months at which money was bet," he had answered, giving his own name, James Newsum. He refused, however, to name any other person who had so played. The court ad-

judged Newsum to be in contempt, and imposed a fine upon him of fifty dollars. The legality of this judgment is the question before us.

It is contended, that the court had no authority to impose this fine, because the witness had not been summoned, or served with a subpœna, as provided by sections 4216 and 4774 of the Code. It is, possibly, a sufficient answer to this, that the witness did not base his refusal on this ground, but on another, which was insufficient. He did not refuse to be sworn, nor absolutely to answer questions propounded to him. His refusal was to disclose the names of persons, other than himself, who were engaged in the game of which he spoke. If he intended to base his refusal on the ground now urged—the absence of a summons issued and served—should he not have stated the true ground? It might have been obviated. From the conduct of the witness, it is manifest he would not have answered the questions, even if brought before the grand jury on subpœna regularly issued and served. Gaming has, for more than half a century, been severely reprehended in our legislative policy, as is shown in the larger latitude allowed grand juries in ferreting out this offense, which, in its most demoralizing forms, generally resorts to secrecy and darkness. The citizen should cheerfully obey the law's commands, no matter how unpleasant the duty it casts upon him. We prefer, however, to place our ruling on a broader ground.

For what purpose is a summons or subpœna issued, and served on a witness? Manifestly to bring him before the tribunal desiring his testimony. It is not necessary to the legality or credibility of the testimony he may give. He may waive this formality, and voluntarily appear, without disparaging his own character, or weakening the force of his evidence. It is common knowledge, that witnesses go before grand juries without summons, and give information on which indictments are found; and it frequently happens that witnesses, wanted before the grand jury, are in prison, as this one was, and can not be commanded by a subpœna. In such cases, the custom is believed to be general, if not universal, to obtain from the court an order that the prisoner be carried before the grand jury, there to testify. We can perceive neither harm nor error in such practice.

Special stress is laid in this case on the phraseology of section 4136 of the Code. The argument is, that as the punitive provisions of that section relate expressly to the case named, viz., to a "person who is summoned as a witness before the grand jury, to answer as to any gaming within his knowledge, and who fails or refuses to attend and testify," &c., that punishment for contempt can not be inflicted unless the wit-

ness had been summoned. The answer to this is, that section 4136 is not the statute which provides punishment for the contempt. That section declares such disobedience a misdemeanor, and provides for its prosecution and punishment as such. True, it characterizes it as a contempt, but it makes no provision for its punishment as a contempt. Section 542 of the Code, subdivision 5, declares that the power of the several courts of this State to inflict summary punishment for contempts, extends to cases of persons refusing to be sworn, or to answer, either in court, or before the grand jury, any lawful question as a witness.

There is no error in the record, and the judgment of the Circuit Court is affirmed.